UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT MONDELLA and TARA MONDELLA, <br><br> Plaintiffs, <br><br> v. <br><br> SCHIFFAHRTSGESELLSCHAFT OLTMANN mbH & CO. KG, SCHIFFAHRTSGESELLSCHAFT OLTMANN VERWALTUNG mbH, and HANSECONTOR SHIPMANAGEMENT GmbH & CO. KG, <br><br> Defendants. | **DISCOVERY ORDER** <br> 20-CV-01059 (HG) (PK) |

**HECTOR GONZALEZ**, United States District Judge:

Plaintiff Robert Mondella, who alleges that he was seriously injured while working aboard a ship owned by Defendants, and his wife, Plaintiff Tara Mondella, seek spoliation sanctions for Defendants' apparent loss or destruction of a "locking pin." They claim the at-issue pin became detached, causing the gangway on which Mr. Mondella was disembarking the ship to collapse. Because Plaintiffs have failed to demonstrate that Defendants denied them an adequate opportunity to inspect the pin, the motion is denied.

## BACKGROUND

As alleged in the Amended Complaint, on April 11, 2019, Mr. Mondella was working on Defendants' ship, JPO Capricornus. ECF No. 20 ¶¶ 9–18 ("AC"). As he disembarked the ship, he fell from the "dangerous and defective" gangway, leaving him "seriously injured." *Id.* ¶ 20. Mr. Mondella sued Defendants for negligence under the Longshore and Harbor Workers' Compensation Act of 1972, 33 U.S.C. § 905(b), and Ms. Mondella sued Defendants for, *inter alia*, loss of society of her husband. AC ¶¶ 21–24.

Because it is relevant to the instant motion, the Court recounts the history of this case in detail.  Mr. Mondella first sued on February 26, 2020, ECF No. 1, and Defendants answered the original Complaint on June 22, 2020, ECF No. 13.  On June 3, 2020, Magistrate Judge Kuo entered the initial scheduling order in this case.  ECF No. 12.  After that, on July 14, 2020, Mr. Mondella served his "First Request for Production, Entry onto Premises & Preservation" on Defendants, which included the following notices:

> **PLEASE TAKE FURTHER NOTICE** that pursuant to Rule 34 of the Fed. R. Civ. P, plaintiff requests permission for his attorneys, surveyors, experts and/or photographers to enter upon the "JPO CAPRICORNUS" to inspect and measure, survey, photograph, video, test or sample the said Vessel at times, dates and places mutually convenient to the undersigned, defendants and their attorneys.

> **PLEASE TAKE FURTHER NOTICE** that plaintiff requests that defendants and those under its/their control, preserve any equipment and appurtenances involved in plaintiff's accident, including but not limited to area involved in plaintiff's accident, until such time as plaintiff's counsel and/or their designated representative has had an opportunity to inspect and measure, survey, photograph, video, test or sample said equipment, and continuing until the time of trial.

ECF No. 59-9 at 7–8 (emphasis in original).[1]

In June 2021, Judge Kuo adjourned all deadlines in the case pending the resolution of Mr. Mondella's workers' compensation claim.  June 22, 2021, Text Order.  After the case was reassigned to me in June 2022, the parties filed a joint update on July 15, 2022, in which they informed Judge Kuo that the workers' compensation claim was resolved.  ECF No. 28.  Judge Kuo then held another scheduling conference, July 28, 2022, Text Order, and entered a new scheduling order on September 6, 2022, ECF No. 31.  On November 17, 2022, the parties informed Judge Kuo that "fact discovery is completed," but requested an extension of time as to the expert discovery deadlines in view of Mr. Mondella's continued medical treatment.  ECF Nos. 34 at 1; 34-1 at 2.  On April 6, 2023, the parties received another extension of time to

---

[1]    The Court refers to the pages assigned by the Electronic Case Files system ("ECF"). Unless noted, quotations from the parties' papers omit all bolding.

complete expert discovery.  Apr. 6, 2023, Text Order.  On May 25, 2023, they submitted a proposed scheduling order, in which they again indicated that fact discovery was complete.  ECF No. 38 at 1.  Judge Kuo entered a new scheduling order on May 25, 2023.  ECF No. 39.  The parties filed a joint status report on November 20, 2023, in which they stated, in relevant part: "Plaintiff, Robert Mondella, is scheduled to be examined on December 8, 2023 by a physician retained by the defendants for a post-surgical examination.  The doctor will issue a report following his examination . . . . Otherwise, all discovery has been completed in this matter.  No dispositive motions are anticipated."  ECF No. 48 at 1.

Nonetheless, on February 27, 2024, Defendants filed a letter requesting a pre-motion conference in anticipation of a motion for summary judgment.  ECF Nos. 52, 53.  Because that letter failed to comply with the Court's Individual Rules, the Court struck it but gave the parties another opportunity to file pre-motion letters.  Feb. 27, 2024, Text Order.  Defendants filed another letter in anticipation of a motion for summary judgment and to preclude expert testimony.  ECF Nos. 54, 55.  Plaintiffs opposed that motion.  ECF Nos. 56, 57.  In their letter, Plaintiffs indicated for the first time their intention to seek spoliation sanctions, and the Court directed the parties to brief the sanctions issue before proceeding to the summary judgment briefing.  Apr. 1, 2024, Text Order.  On May 1, 2024, Plaintiffs filed their motion.  ECF Nos. 59; 59-14 (Plaintiffs' Memorandum of Law, "Mot.").  On May 31, 2024, Defendants filed their opposition.  ECF No. 60 (Defendants' Memorandum of Law, "Opp.").  Plaintiffs filed a reply on June 14, 2024.  ECF No. 61 ("Reply").

## LEGAL STANDARD

Spoliation means "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 107 (2d Cir. 2001).  Although both sides

3

proceed under a spoliation framework, the Court must confirm that is the appropriate paradigm

for resolving this motion. *Compare* Mot. at 20, *with* Opp. at 20. A "typical spoliation case"

involves the destruction of evidence, in contrast to a case involving, for example, the belated

production of evidence. *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106

(2d Cir. 2002).[2]  In this case, the parties are unfortunately vague as to the status of the at-issue

pin. Plaintiffs have no affirmative evidence that the pin was destroyed or is missing. Mot. at 11.

Defendants, who are obviously in a superior position to know, unhelpfully state that "[P]laintiffs

have never asked what became of the pin, have made no attempts to inspect it, and merely

state . . . that the pin 'is presumed destroyed.'" Opp. at 11 (quoting Mot. at 11). A reasonable

observer would imagine that were the pin still available for inspection, Defendants would have

mentioned that central, useful fact in their 41-page submission. Instead, they intimate that the

pin is now gone. *See id.* at 13 ("Plaintiffs had more than an adequate and meaningful

opportunity to inspect the vessel and pin, but chose not to do so." (capitalization altered)).

Because Defendants admit that the pin existed and have put forward nothing indicating that it

remains available, the Court may assume that the pin is missing. *Herbert v. Lynch*, No. 22-cv-

6303, 2024 WL 20942, at *5 (S.D.N.Y. Jan. 2, 2024). The law of spoliation therefore governs

this dispute.

　　"A party spoliates evidence if (1) the party having control over the evidence had an

obligation to preserve it at the time it was destroyed; (2) the records were destroyed with a

culpable state of mind; and (3) the destroyed evidence was relevant to the party's claim or

defense such that a reasonable trier of fact could find that it would support that claim or

defense." *Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 139 (2d Cir. 2023). "A party seeking

---

[2]　　Unless noted, case law quotations in this Order accept all alterations and omit internal
quotation marks, citations, footnotes.

spoliation sanctions has the burden of establishing the elements of a spoliation claim by a preponderance of the evidence." *Dilworth v. Goldberg*, 3 F. Supp. 3d 198, 200 (S.D.N.Y. 2014); *accord Tchatat v. O'Hara*, 249 F. Supp. 3d 701, 711 (S.D.N.Y. 2017), *objection overruled*, 2017 WL 3172715, at *9–11 (S.D.N.Y. July 25, 2017), *aff'd*, 795 F. App'x 34, 36–37 (2d Cir. 2019).

**DISCUSSION**

This motion turns on the first prong of the spoliation test, or whether Defendants "had an obligation to preserve [the pin] at the time it was destroyed." *Rossbach*, 81 F.4th at 139. Normally, when that element is at issue, the controversy surrounds when the obligation to preserve was triggered. *See Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003) ("The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation."). Here, in contrast, the issue arises at the other end of the timeline: if and when did Defendants' obligation to preserve the pin end? At the outer bound, "the obligation to preserve evidence does not continue indefinitely." *Aktas v. JMC Dev. Co.*, 877 F. Supp. 2d 1, 13 (N.D.N.Y. 2012) (citing *Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*, 473 F.3d 450, 458 (2d Cir. 2007)). And "[t]he duty to preserve evidence may be extinguished by providing the opposing party with an adequate and meaningful opportunity to inspect." *See id.* (citing cases).

Against this legal backdrop, the key issue for Plaintiffs is that they cannot reasonably argue that they were denied an "adequate and meaningful opportunity to inspect" the pin (or the ship, for that matter). Defendants argue that Plaintiffs "evinced an affirmative abandonment of any interest in an in-person inspection" because they "never once followed up on their preservation notice," excerpted above, "with a letter, an email, or even a phone call. They never once raised the issue of inspection with the Court, they twice certified to the Court that all discovery was complete, and they produced an expert report which drew unequivocal

5

conclusions on liability without inspecting, or expressing a need to inspect, the Vessel or pin in

person." Opp. at 17.[3]   That argument may overstate how conscious Plaintiffs were when they

failed to pursue an inspection, but it is nevertheless persuasive, especially insofar as Plaintiffs

repeatedly confirmed to Judge Kuo that discovery was complete.

Plaintiffs do not undermine Defendants' arguments concerning Plaintiffs' silence on this

issue during discovery.  Instead, they say that Defendants had to preserve the pin and disclose its

existence, and that they "cannot now blame plaintiffs for failing to seek an inspection of the

spoliated pin which no longer existed." Reply at 4.  But that argument assumes without evidence

that the pin was never available for inspection at a time in which Defendants were obligated to

make it available.  Indeed, Plaintiffs cannot actually make that desired argument because they

failed to pursue the inspection during discovery, the appropriate time for doing so.  *See* Fed. R.

Civ. P. 34(a)(1)(B) (permitting the inspection of tangible things and cross-referencing Rule

26(b), which governs the scope of discovery).  Defendants point to the persuasive decision in

*Pirrello v. Gateway Marina*, in which the court declined to impose sanctions where no parties

inspected a boat until one year after the plaintiff filed suit, at which point they discovered that the

at-issue evidence, the boat's gas tank, had been displaced.  No. 08-cv-1798, 2011 WL 4592689,

at *3 (E.D.N.Y. Sept. 30, 2011).  The court explained that such delay "weigh[ed] heavily against

the imposition of sanctions." *Id.* at *6.  Just as in this case, that court found that "since there

[was] no conclusive evidence as to when the gas tank was discarded, it [was] impossible to

determine whether the parties could have conducted a meaningful inspection had they acted with

more diligence." *Id.*  Nevertheless, the court concluded that it would have been

"unreasonable . . . to expect that evidence would be preserved indefinitely, particularly under the

---

[3]     Defendants also argue that Plaintiffs' motion should be denied because it is not timely.
Opp. at 18–20.  Although the Court may have discretion not to entertain a motion for sanctions at
this late juncture, no rule prevents the Court from doing so.

circumstances" of, *inter alia*, such lengthy delay.  *Id.*  So, too, here, where Plaintiffs not only did

not ask to inspect the pin but also repeatedly confirmed the completion of discovery.[4]

The parties make several additional arguments, none of which is persuasive.  First,

Plaintiffs argue that "[i]n cases cited by [D]efendants where a spoliation sanction was denied, the

alleged spoliator at the very least provided an explanation for the failure to preserve/produce

evidence."  Reply at 7.  To be sure, Defendants' vagueness on this issue is disquieting and both

the parties and the Court would have been better served by candor.  But Plaintiffs have the

sequencing wrong.  Had the Court needed to craft a sanction for spoliation, this issue certainly

would have been relevant.  *See West v. Goodyear Rubber & Tire Co.*, 167 F.3d 776, 779 (2d Cir.

1999) (in exercising its "broad discretion" to craft a sanction, a court must consider

"prophylactic, punitive, and remedial rationales underlying the spoliation doctrine").  However,

the Court does not reach that issue here because Plaintiffs have failed to carry their burden in the

first instance to prove that Defendants spoliated the pin.  *See supra* at 4–5.  Plaintiffs

fundamentally misconstrue both that burden and the distinction between the substantive standard

for spoliation and the associated principles for crafting spoliation sanctions.  *See* Reply at 9

("Conspicuously absent from defendants' opposition is any discussion negating the elements

required for a spoliation sanction to issue[.]").

Next, Plaintiffs complain about other alleged discovery violations.  They suggest that

Defendants failed to produce the pin in response to document requests they served on

Defendants, including for documents "referencing or regarding inspection and/or repair of the

---

[4]     Plaintiffs observe that the *Pirrello* court considered the costs associated with maintaining
the boat.  Reply at 6.  That is true, but also makes no difference here.  The salient point is that
parties do not have a perpetual obligation to preserve evidence, but "need do only what is
reasonable under the circumstances."  2011 WL 4592689, at *5.  A party's lack of diligence in
obtaining evidence and, critically, affirmative representations that it did not intend to pursue
more discovery, bears on how reasonable it is for the opposing party to discard that evidence.

subject gangway." Mot. at 10. But as Defendants correctly observe, that is an attempt to

"shoehorn" a request for inspection into what are, on their face, document requests. Opp. at 11.

To the extent Plaintiffs are actually complaining that Defendants have failed to produce

responsive documents, they never have, and do not presently, seek relief for such violations.

Mot. at 11. Relatedly, Plaintiffs contend that Defendants failed to disclose the existence of the

pin in their Rule 26 disclosures. Reply at 5–6. The Court need not entertain that argument raised

for the first time on reply. *Fisher v. Kanas*, 487 F. Supp. 2d 270, 278 (E.D.N.Y. 2007). But

even if it did, Plaintiffs' claim would not affect the outcome here because they do not explain the

relevance of this argument for proving spoliation, nor do they advance an independent claim for

sanctions pursuant to Rule 37(c)(1), the mechanism for enforcing Rule 26 obligations.

Finally, Defendants argue for preclusion of Dr. Scott Lieberman's expert findings for

both this motion and on summary judgment. Opp. at 24–27; ECF No. 59-15 (Lieberman Dec.).

That request is moot. As to this motion, Dr. Lieberman's findings concerning the utility of

inspecting the pin implicate only the missing evidence's relevance. Mot. at 5, 15–17. The Court

need not consider that portion of Plaintiffs' argument because their claim fails at the first step of

the spoliation analysis. And as to summary judgment, Plaintiffs indicate that they do not intend

to rely on Dr. Lieberman. Reply at 8. Thus, no further relief is warranted.

## CONCLUSION

This case exemplifies the consequences of the failure of parties to appropriately

communicate during discovery. Clearly, as a matter of good practice, it would have been

preferable for Defendants to inform Plaintiffs that the pin was or would become unavailable. At

the same time, this case also shows how a party may, inadvertently or not, compromise its

position by not vigorously and diligently pursuing discovery, as failing to do so may ultimately

make it impossible for the complaining party to obtain relief for otherwise sanctionable conduct.

Had Plaintiffs scheduled an inspection during discovery, they would have obtained either the

sought-after evidence or the necessary factual foundation for this motion.  Accordingly, because

Plaintiffs have put forward no evidence that Defendants denied them an adequate opportunity to

inspect the pin, they have fallen far short of satisfying a necessary element of their spoliation

claim.  Their motion for sanctions must therefore be denied.  The Court will enter a separate

scheduling order for briefing on summary judgment and *Daubert* motions.

   SO ORDERED.

                */s/ Hector Gonzalez*
                HECTOR GONZALEZ
                United States District Judge

Dated: Brooklyn, New York
    July 9, 2024

9