UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ROBERT MONDELLA and TARA
MONDELLA,

                Plaintiffs,

        v.

SCHIFFAHRTSGESELLSCHAFT
OLTMANN mbH & CO. KG,
SCHIFFAHRTSGESELLSCHAFT
OLTMANN VERWALTUNG mbH, and
HANSECONTOR SHIPMANAGEMENT
GmbH & CO. KG,

                Defendants.

**MEMORANDUM & ORDER**
20-CV-01059 (HG) (PK)

**HECTOR GONZALEZ**, United States District Judge:

At its core, this case involves an alleged injury on a ship.  Specifically, Plaintiffs Robert

Mondella and Tara Mondella allege that Mr. Mondella was seriously injured when he fell from a

gangway while performing services on board the JPO Capricornus (the "Capricornus"), a vessel

owned by Defendants.  *See* ECF No. 1.[1]

Mr. Mondella claims that his injuries were a result of Defendants' negligence, and that

Defendants are liable for damages pursuant to the Longshore and Harbor Workers'

Compensation Act, 33 U.S.C. § 905(b).  Presently before the Court is Defendants' consolidated

motion, in which they move, first, pursuant to Federal Rule of Evidence 702 and the *Daubert v.*

*Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) line of cases, to exclude the report and

---

1      Unless otherwise indicated, when quoting cases and the parties' papers, the Court omits
all internal quotation marks, alteration marks, emphases, footnotes, and citations.  The Court
refers to the pages assigned by the Electronic Case Files system ("ECF"), except when quoting to
deposition transcripts, where the Court cites to the original page number on the native document.
When citing to the parties' Rule 56.1 statements, the Court incorporates references to the record.

testimony of Plaintiffs' expert witness, Captain Joseph Ahlstrom ("Capt. Ahlstrom"); and, second, pursuant to Federal Rule of Civil Procedure 56, for summary judgment dismissing Plaintiffs' claims. *See* ECF No. 73.

For the reasons stated below, Defendants motion to exclude the report and testimony of Capt. Ahlstrom is GRANTED, and Defendants' motion for summary judgment is GRANTED.

## BACKGROUND

### I.    Relevant Facts

The following facts are either undisputed by the parties or presented in the light most favorable to Plaintiffs.[2]

This action is based on events that occurred on April 11, 2019, on or near the Capricornus, a nearly 900-foot-long container vessel capable of carrying thousands of shipping containers, that Defendants own. ECF No. 57-1 at 8. At all relevant times, the Capricornus was docked at the Howland Hook Marine Terminal in Staten Island, a facility owned and operated by Global Container Terminal. *Id.* at 2, 8. Global Container Terminal was also Mr. Mondella's employer during the relevant period. *Id.*

The gangway of the Capricornus lies at the heart of this action. At approximately 7:00 am on the morning of April 11, 2019, the vessel's crew assembled the gangway. ECF No. 57-3 at 16:2–7. Shortly after it was assembled, Mr. Mondella first used the gangway to board the Capricornus and began unlashing containers on the vessel. ECF No. 57-1 at 9.

---

[2]    Unless otherwise indicated, the Court recites the facts from Plaintiffs' counterstatement to Defendants' Rule 56.1 statement to the extent those facts are undisputed by the parties and incorporates their references to the record, as "a reasonable trier of fact, weighing the conflicting evidence and resolving all ambiguities and credibility determinations in Plaintiff[s'] favor, could infer that the following events transpired." *Grant v. City of New York*, No. 15-cv-3635, 2019 WL 1099945, at *4 (E.D.N.Y. Mar. 8, 2019).

Mr. Mondella and others used the gangway throughout the morning, and the gangway was inspected at regular intervals.  *Id.*; ECF No. 73-5 at 29:10–31:5, 33:8–18, 34:10–19; 68:17–69:13.

At approximately 1:30 pm, after he finished unloading another round of containers, Mr. Mondella was using the gangway to disembark the vessel.  ECF No. 57-1 at 9.  As he made his way down the gangway, part of the handrail he was using became loose when a pin disengaged.  *Id.*  Without the pin, the handrail shifted forward, *id.* at 9–11, and Mr. Mondella fell down several of the gangway's steps, injuring his neck and back.  *Id.*

## II.    Procedural Background

Mr. Mondella initiated this action on February 26, 2020, ECF No. 1, suing Defendants for negligence under the Longshore and Harbor Workers' Compensation Act of 1972, 33 U.S.C. § 905(b) (the "LHWCA"), and Defendants answered the original Complaint on June 22, 2020, ECF No. 13.  On March 12, 2021, Mr. Mondella filed an Amended Complaint, adding his wife, who is suing Defendants for, *inter alia*, loss of society related to her husband's alleged injury.  ECF No. 20 ¶¶ 21–24.

After protracted discovery, the parties filed a joint status report on November 20, 2023, in which they stated, in relevant part, that discovery would be completed by December 8, 2023, and that "[n]o dispositive motions [were] anticipated."  ECF No. 48 at 1.

Nonetheless, on February 27, 2024, Defendants filed a letter requesting a pre-motion conference in anticipation of a motion for summary judgment.  ECF Nos. 52, 53.  But, because that letter failed to comply with the Court's Individual Rules, the Court struck it but gave the parties another opportunity to file pre-motion letters.  Feb. 27, 2024, Text Order.  Defendants filed another letter in anticipation of a motion for summary judgment and to preclude expert

testimony.  ECF Nos. 54, 55.  Plaintiffs opposed that motion.  ECF Nos. 56, 57.  In their letter, Plaintiffs indicated for the first time their intention to seek spoliation sanctions, and the Court directed the parties to brief the sanctions issue before proceeding to the summary judgment briefing.  The parties filed their respective briefs in due course, *see* ECF Nos. 59, 60, 61, and on July 9, 2024, the Court issued its Order denying Plaintiffs' motion for sanctions, *Mondella v. Schiffahrtsgesellschaft Oltmann mbH & Co. KG*, No. 20-cv-1059, 2024 WL 3343954 (E.D.N.Y. July 9, 2024).  The Court also directed the parties to proceed to summary judgment briefing. July 9, 2024, Text Order.

Ultimately, pursuant to the Court's Order directing Defendants to file both parties' motion papers, Dec. 10, 2024, Text Order, on March 17, 2025, Defendants filed:  their consolidated motions to exclude Capt. Ahlstrom's testimony and for summary judgment, ECF No. 73; Plaintiffs' consolidated opposition to their motions, ECF No. 74; and their reply, ECF No. 75.

## LEGAL STANDARD

### I.    Summary Judgment

Summary Judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  The moving party has the burden of demonstrating that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (moving party entitled to summary judgment where the

"nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof").  "Where the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).  In deciding a summary judgment motion, any ambiguities and inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party.  *LaFond v. Gen. Physics Servs. Corp.*, 50 F.3d 165, 171 (2d Cir. 1995).  "In reviewing the evidence and the inferences that may reasonably be drawn, [the Court] may not make credibility determinations or weigh the evidence . . . [such functions], and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Proctor v. LeClaire*, 846 F.3d 597, 607–08 (2d Cir. 2017).

## II.    The Longshore and Harbor Workers' Compensation Act

The LHWCA establishes a comprehensive workers' compensation program for longshoremen who suffer from qualifying injuries.  Section 905(b) sets forth circumstances in which the vessel may be held liable for a worker's injuries.  It provides, in relevant part, that:

> In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party. . . . The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.

33 U.S.C. § 905(b).  In situations involving "the typical tripartite situation" between a longshoreman, his independent stevedore-employer, and the vessel, "the longshoreman . . . may . . . recover tort damages if he can prove negligence by the vessel." *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 530 (1983).  The contributory negligence of the longshoreman will not bar recovery, though his comparative fault may be considered in mitigation of damages. *See O'Hara v. Weeks Marine, Inc.*, 294 F.3d 55, 66 (2d Cir. 2002).

Though Section 905(b) uses the term "negligence," it does not define it. *Howlett v. Birkdale Shipping Co., S.A.*, 512 U.S. 92, 97–98 (1994). Therefore, the Supreme Court, in *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156 (1981) ("*Scindia*"), "outlined the three general duties shipowners owe to longshoremen":

> The first, which courts have come to call the "turnover duty," relates to the condition of the ship upon the commencement of stevedoring operations. . . . The second duty, applicable once stevedoring operations have begun, provides that a shipowner must exercise reasonable care to prevent injuries to longshoremen in areas that remain under the "active control of the vessel." The third duty, called the "duty to intervene," concerns the vessel's obligations with regard to cargo operations in areas under the principal control of the independent stevedore.

*Howlett*, 512 U.S. at 98 (citing *Scindia*, 451 U.S. at 167–78). A breach of any of these three duties—often referred to as the "*Scindia* duties"—"gives rise to a right of action under [Section] 905(b)." *Vargas v. APL Ltd.*, 431 F. Supp. 3d 82, 88 (E.D.N.Y. 2019) (citing *Howlett*, 512 U.S. at 98 and collecting cases).

### III.    Federal Rule of Evidence 702

In the context of a motion for summary judgment, the Court considers only admissible evidence, and "has wide discretion in determining which evidence is admissible." *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). When evaluating the admissibility of expert testimony, Federal Rule of Evidence 702 controls. Rule 702 permits expert testimony, provided that it is relevant and reliable, *i.e.*, the proponent demonstrates, by a preponderance of the evidence, that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702; *Daubert*, 509 U.S. at 593, 593 n.10.

The Court, for its part, "must determine: (1) whether the witness is a qualified expert; (2) whether the opinion is based on application of reliable data and methodology to the facts of the case; and (3) whether the expert's testimony will assist the trier of fact to understand the evidence or determine an issue of fact." *Boateng v. Bayerische Motoren Werke Aktiengesellschaft*, No. 17-cv-209, 2022 WL 4357555, at *10 (E.D.N.Y. Sept. 20, 2022).

Because "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence," *Daubert*, 509 U.S. at 596, the "exclusion of expert testimony is warranted only when the district court finds serious flaws in reasoning or methodology," *Lickteig v. Cerberus Cap. Mgmt., L.P.*, 589 F. Supp. 3d 302, 330 (S.D.N.Y. 2022). Although the Rule 702 standard is not particularly onerous, it "still imposes limits on how shaky an expert's testimony [may] be," *Wills v. Microgenics Corp.*, No. 20-cv-4432, 2025 WL 2208291, at *3 (E.D.N.Y. Aug. 4, 2025), and bars expert testimony that is "speculative or conjectural or based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison," *Restivo v. Hessemann*, 846 F.3d 547, 575–76 (2d Cir. 2017).

## DISCUSSION

Because "[t]he Court may only consider admissible evidence in evaluating the parties' motions for summary judgment," *Wills v. Microgenics Corp.*, No. 20-cv-4432, 2025 WL 2208291, at *2 (E.D.N.Y. Aug. 4, 2025) (citing *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997)), the Court addresses Defendants' motion to preclude the testimony of Capt. Ahlstrom before addressing their motion for summary judgment. *Forte v. Liquidnet Holdings, Inc.*, No. 14-cv-2185, 2015 WL 5820976, at *4 (S.D.N.Y. Sept. 30, 2015), *aff'd*, 675 F. App'x 21 (2d

Cir. 2017) (citing *Raskin*, 125 F.3d at 66) ("[W]hen a party offers expert testimony . . . and a separate motion has been made to preclude such testimony, a court must decide the motion to preclude first, in order to determine whether such testimony may be considered in connection with the summary judgment motion.").

## I.    The Motion to Preclude Capt. Ahlstrom's Expert Testimony

Defendants move to preclude Capt. Ahlstrom's testimony by arguing that the six opinions in his expert report, *see* ECF No. 74-19 at 10–11, "blow through the[] guardrails" that Rule 702 "erects . . . to protect against the substantial risk of unfair prejudice improper expert opinions pose," ECF No. 73 at 20.  With no hint of irony, Defendants ask the Court to find that the metaphorical guardrails of Rule 702 apply such that they preclude the expert testimony of Capt. Ahlstrom, which concerns the literal guardrails on the gangway of the Capricornus.

Defendants challenge each of the enumerated opinions in Capt. Ahlstrom's report on at least one of the following grounds:  (1) that he is unqualified; (2) that his opinions are speculative, conjectural, or otherwise rely on insufficient evidence; and (3) that he relies on principles or methods that are inappropriate or otherwise improper for expert testimony.  *See* ECF No. 73 at 20–25.  In Defendants' view, when these infirmities are stacked up, Capt. Ahlstrom's report "do[es] not assist the Court or trier of fact, but pose[s] a substantial risk of unfairly prejudicing Defendants," and, therefore, should be excluded in its entirety.  *Id.* Plaintiffs contest most of Defendants' arguments,[3] and argue that "based on [Capt. Ahlstrom's]

---

[3]    Plaintiffs concede that Opinion 4 and Opinion 6 should be "precluded."  ECF No. 74 at 35 n.22.  In light of those concessions, Defendants' arguments as to those paragraphs of Capt. Ahlstrom's report are moot.  *See Manbro Energy Corp. v. Chatterjee Advisors, LLC*, No. 20-cv-3773, 2023 WL 2563054, at *2 (S.D.N.Y. Mar. 17, 2023) (finding defendants' motion *in limine* moot "to the extent [they] seek to preclude evidence or argument that [p]laintiff has disclaimed").  Accordingly, the Court does not consider them for the purposes of the instant motions.  *See Nora Beverages, Inc.*, 164 F.3d at 746.

specialized and relevant knowledge, skill, experience, training and education, and his review of the referenced materials," his testimony satisfies Rule 702's requirements. *See* ECF No. 74 at 29–37.

### A.    Capt. Ahlstrom's Qualifications

The Court begins by evaluating Capt. Ahlstrom's qualifications. Defendants' arguments in this regard concern Capt. Ahlstrom's "defective pin theory," in which he posits that the accident occurred because the pin used in the gangway handrail was dangerous due to its "rusted and deteriorated condition." ECF No. 74-19 at 10. Defendants argue that Capt. Ahlstrom "is not a metallurgist, possesses no educational background, training, or experience in the field of metallurgy, and is not qualified to opine on metallurgical matters (*i.e.*, whether the pin was rusted or corroded, leading it to be in a 'defective' condition)." ECF No. 73 at 21. Plaintiffs argue that Capt. Ahlstrom's metallurgic *bona fides*, or lack thereof, is a "quibble [] of no moment," because his extensive experience as a ship's Master and "with this *exact* type of gangway pin" are sufficient to qualify him as an expert that can reliably testify about the condition of the pin. ECF No. 74 at 30–31 (emphasis in original).

Although Capt. Ahlstrom is an expert, his expertise on "hundreds if not thousands of [gangways]" demonstrates that he has experience generally with the type of gangway pin at issue, ECF No. 74 at 30–31, but it does not demonstrate that his expertise extends to qualify him to render the testimony about the condition and structural integrity of the pin at issue here. Plaintiffs' focus on Capt. Ahlstrom's experience on large ships demonstrates only that his experience with this type of pin has been tangible, *i.e.*, his expertise is based on his ability to touch, see, and test every angle and aspect of a pin. However, it does not demonstrate that Capt. Ahlstrom's experience qualifies him to opine on the condition of *this* pin—a pin that he experienced only through a photograph. *See* ECF No. 74 at 31–32.

Capt. Ahlstrom does not need to be a classically trained metallurgist, but he must have experience such that the Court is persuaded that his opinions on the condition of the at-issue pin are as reliable as his opinions based on other pins that were available for him to inspect in person.  Plaintiffs have failed to demonstrate that Capt. Ahlstrom has experience in evaluating the condition of gangway pins through a *single photograph*.  Because Plaintiffs have not demonstrated that Capt. Ahlstrom has such experience, Plaintiffs have failed to demonstrate by a preponderance of the evidence that Capt. Ahlstrom is qualified to testify about matters of deterioration or structural integrity under these circumstances.

> B.     *Capt. Ahlstrom's Testimony is not Based on Sufficient Data nor is it the Product of Reliable Principles and Methods*

Even if Capt. Ahlstrom's qualifications were enough to save his testimony concerning the pin at issue here, the "focus [of the admissibility inquiry] must be solely on [the potential expert's] principles and methodology." *Daubert*, 509 U.S. at 595.  That focus reveals that Rule 702 bars the entirety of Capt. Ahlstrom's testimony because his testimony is not based on sufficient facts or data, is not the product of reliable principles and methods, and his opinions do not reflect a reliable application of such principles and methods.  *See* Fed. R. Evid. 702.  The Court addresses each of these deficiencies in turn.

> i.     Capt. Ahlstrom's Testimony is not Based on Sufficient Data

Plaintiffs fail to demonstrate that portions of Capt. Ahlstrom's testimony are based on "sufficient facts or data."  Fed. R. Evid. 702(b).

Defendants challenge various parts of Opinions 2, 3, and 5 of Capt. Ahlstrom's report on the grounds that they are "speculative/conjectural," *i.e.*, rely on insufficient facts or data. Specifically, with respect to Opinion 2, Defendants argue that Capt. Ahlstrom's "failure to perform in-person inspection/testing renders [Opinion 2] speculative/conjectural" and "is based

on no data at all." ECF No. 73 at 21–22. Defendants challenge the "lack of factual support" for statements in Opinion 3 and challenge Opinion 5 because it has "no factual support." *Id.* at 24.

At bottom, Defendants rely on the fact that Capt. Ahlstrom did not inspect the relevant pin or gangway in person. Although the failure to conduct such inspection is not enough, by itself, to render expert testimony unreliable, Plaintiffs do not demonstrate that his testimony concerning his review of the available materials is reliable. In fact, Plaintiffs demonstrate the opposite. Plaintiffs previously stated in their spoliation motion that "without the subject pin available for inspection, there is no way for [P]laintiffs to determine . . . any hidden danger presented by the pin's condition," and "no way for [P]laintiffs to determine whether [D]efendants exercised due care in using the subject pin by failing to conduct a reasonable inspection." ECF No. 59-14 at 19–20. In other words, Plaintiffs conceded that without the tangible pin, their expert would not have access to sufficient facts or data necessary to determine the pin's condition—those concessions are fatal.

If there was not enough information for Plaintiffs' expert to determine material facts about the pin's condition then, there is certainly not enough information now. Plaintiffs cannot credibly demonstrate that Capt. Ahlstrom's testimony regarding the subject pin is based on sufficient facts or data. In other words, "there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). That analytical gap renders the portions of the testimony that concern the condition of the pin speculative and conjectural. Because Rule 702 bars such speculative and conjectural testimony, *Restivo*, 846 F.3d at 575–76, the Court must preclude it.

ii.     Capt. Ahlstrom's Testimony is not the Product of Reliable
        Principles and Methods

The fact that significant portions of the testimony rely on insufficient facts or data raises

questions about whether the rest of the testimony is based on reliable principles and methods, but

that question is not left unanswered for long.  In fact, the first paragraph of Capt. Ahlstrom's

report, *i.e.*, Opinion 1, reveals that it is not a reliable application of such principles and methods.

The remaining paragraphs fare no better.

Specifically, Defendants argue that:  Opinion 1 is "nothing more than pure conclusions of

law that usurp[s] the role of the trial judge," ECF No. 73 at 20; Opinion 2, in addition to the

flaws already discussed, fails to "properly consider and rule out reasonable alternative causes of

[Mr.] Mondella's injury," *id.* at 22; Opinion 3 improperly opines on "on alleged violations of

law/regulations . . . [and] a supposed causal connection between a law/code violation and an

injury, which is the province of the judge/jury," *id.* at 24; and that Opinion 5 improperly

"wrest[s] from the Court its role of instructing the jury as to the applicable law" because it opines

on the duties of the Capricornus or longshoremen, *id.*

The Court is not persuaded by Plaintiffs' counter arguments.  With respect to Opinion 1,

Plaintiffs argue that Capt. Ahlstrom is merely "provid[ing] background information based on his

extensive experience."  ECF No. 74 at 35.  The Court is not convinced.  Even a cursory review

of Opinion 1 shows a striking similarity to Plaintiffs' theory of the duty of care in this case.

*Compare* ECF No 74-19 at 10 ("[Capricornus] personnel were responsible for deploying the

gangway, inspecting the gangway, and maintaining an active gangway watch to ensure the safety

of all who board and disembark the Vessel . . . [Mr.] Mondella ha[s] absolutely no

responsibility . . ."), *with* ECF No. 74 at 19–28 (arguing the gangway was under the exclusive

control of Capricornus personnel, that the Defendants breached their "active control duty," and

that the Capricornus breached its "turnover duty").  This similarity is "inappropriate" because Opinion 1 is, nothing more than an expert "simply accumulating and putting together one party's story," which is "expressly prohibited."  *Kozak v. Liberty Mar. Corp.*, 729 F. Supp. 3d 277, 294 (E.D.N.Y. 2024).

As to Opinion 2, Plaintiffs do not respond to Defendants' arguments concerning the failure to consider reasonable alternative causes.  This is fatal because "if an expert fails to adequately account for obvious alternative explanations, the testimony is not reliable."  *Faison-Williams v. United States*, No. 24-1404, 2025 WL 974831, at *3 (2d Cir. Apr. 1, 2025); Fed. R. Evid. 702 advisory committee's note ("Whether the expert has adequately accounted for obvious alternative explanations" is one of several factors that "[c]ourts both before and after *Daubert* have found . . . relevant in determining whether expert testimony is sufficiently reliable to be considered by the trier of fact.").  Capt. Ahlstrom's failure to consider potential alternative explanations, and Plaintiffs' failure to address this deficiency, further undermine the Court's confidence that the subject testimony is the product of reliable principles and methods.

The Court agrees with Defendants that Opinion 3 is effectively a legal conclusion dressed up as expert testimony.  *See* ECF No. 73 at 24.  Expert opinions on legal conclusions are improper and impermissible; courts cannot allow experts to testify to legal conclusions, because doing so "would give the appearance that the court was shifting to witnesses the responsibility to decide the case."  *Marx & Co. v. Diners' Club Inc.*, 550 F.2d 505, 510 (2d Cir. 1977); *see also Golden v. OSG Ship Mgmt., Inc.*, No. 14-cv-06636, 2017 WL 11454726, at *3 (S.D.N.Y. Oct. 12, 2017) ("An expert cannot be permitted to testify to the legal consequences of any alleged code violations, because it is the role of the court to determine what violations would demonstrate negligence and the role of the jury to determine whether such violations occurred.").

Here too, Plaintiffs fail to address Defendants' arguments concerning the appropriate principles and methods necessary for expert testimony, and, therefore, fail to demonstrate that Opinion 3 "reflects a reliable application of the principles and methods to the facts of the case."  Fed. R. Evid. 702.

Opinion 5 is improper for the same reasons as Opinions 1 and 3.  Most of Opinion 5 is a mere recitation of Plaintiffs' theory of the case (which, as previously discussed, is "expressly prohibited," *Kozak*, 729 F. Supp. 3d at 294).  The remaining portions are overt legal conclusions about the duty of care and causation.  *See* ECF No. 74-19 at 10 ("[Mr.] Mondella had no such duty or responsibility [and] [h]ad Vessel crew check[ed] the pin to make sure the drop nose/folding pin was properly seated, [he] would not have been injured").  Again, as the Court previously discussed, those types of conclusions "cannot be permitted."  *See Golden*, 2017 WL 11454726, at *3.

To the extent Capt. Ahlstrom's testimony was not already barred due to his qualifications (*see* Part I.A, *supra*), or because his testimony was based on insufficient data (*see* Part II.B.i, *supra*), the instant analysis makes clear that Capt. Ahlstrom's testimony suffers from "serious flaws in reasoning or methodology."  *Lickteig*, 589 F. Supp. 3d at 330.  Plaintiffs' failure to demonstrate that their proposed expert's testimony "is the product of reliable principles and methods," or "a reliable application of the principles and methods to the facts of the case" is particularly troubling, as the principles-and-methods components of Rule 702 is the crux of the Court's inquiry.  *See* Fed. R. Evid. 702(c)–(d); *Amorgianos v. National R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002).

C.   *Capt. Ahlstrom's Testimony Will Not Assist the Trier of Fact to Understand the Evidence or Determine an Issue of Fact*

Concerns about the reliability of Capt. Ahlstrom's reasoning and methodology, the sufficiency of available data, and the other infirmities discussed above lead the Court to the inescapable conclusion that Capt. Ahlstrom's testimony will not assist the trier of fact.  *See* Fed. R. Evid. 702(a).  Taken together, Plaintiffs fail to demonstrate that Capt. Ahlstrom's testimony satisfies even one of the four requirements of Rule 702.  Therefore, the Court finds "that there is simply too great an analytical gap between the data and the opinion proffered."  *Joiner*, 522 U.S. at 146.  That analytical gap renders Capt. Ahlstrom's testimony at best, irrelevant, useless, and sure to waste time.  *See* Fed. R. Evid. 403.  More likely, the testimony poses a substantial risk of unfair prejudice, confusion, and misleading the jury.  *See id.*  Regardless, it is inadmissible— Defendants' motion to exclude Capt. Ahlstrom is granted.

## II.   The Motion for Summary Judgment

Plaintiffs argue, in effect, that they have presented a straightforward negligence case based on the doctrine of *res ipsa loquitur*, and because Defendants breached two of the *Scindia* duties (the "active control" and "turnover" duties), which led to Mr. Mondella's injuries.[4]  *See* ECF No. 74 at 19–28.  Defendants move for summary judgment on Plaintiffs' claims, arguing that *res ipsa loquitur* does not apply "given the undisputed fact that Defendants did not have exclusive control of the instrumentality that allegedly led to [Mr.] Mondella's injury," and that Plaintiffs cannot demonstrate a breach of any *Scindia* duty and, therefore, cannot prove the essential elements of their claim under the LHWCA.  See ECF No. 73 at 6–7.

---

[4]     The third *Scindia* duty does not apply here, as Plaintiffs "do not contend that the 'duty to intervene' applies here."  ECF No. 59-14 at 18 n.7; *see also* ECF No. 73 at 6.

A.    *Res Ipsa Loquitur*

Plaintiffs invoke the doctrine of *res ipsa loquitur*, arguing that application of the doctrine "presents an issue of fact for a jury." ECF No. 74 at 19.  For the doctrine to apply, Plaintiffs must establish each element of the *res ipsa loquitur* test:  "(1) the event was of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it was caused by an agency or instrumentality within the exclusive control of the defendant; and (3) it was not due to any voluntary action or contribution on the part of the plaintiff." *St. Paul Fire & Marine Ins. Co. v. New York*, 907 F.2d 299, 302 (2d Cir. 1990).  Defendants challenge that the doctrine applies at all.  Specifically, they argue that "the exclusive control element is unsatisfied as a matter of law given that third parties had access to the gangway." ECF No. 75 at 5.

The Court agrees with Defendants.  Plaintiffs do not demonstrate that the gangway was in Defendants' exclusive control, and "it is not enough to prove that the defendant had control if there is sufficient evidence that a third party also had access to the instrumentality that caused the injury." *St. Paul Fire & Marine Ins. Co.*, 907 F.2d at 303.  In fact, Plaintiffs demonstrate the opposite.  It is undisputed that the gangway was used by others.  *See* ECF No. 57-1 at 6 (undisputed that "various stevedores came up and down the gangway"); *see also* ECF No. 57-3 at 35: 3–14 (describing various longshoremen, and "authorities from the shore" using the gangway during the relevant period).

Here, because there is no genuine dispute over whether others used the gangway, Plaintiffs fail to satisfy the second element of the *res ipsa loquitur* test, and the doctrine does not apply.  *See Maitland v. Target Corp.*, No. 20-cv-3892, 2023 WL 6282918, at *8 (E.D.N.Y. Sept. 26, 2023), *aff'd*, 2024 WL 5182674 (2d Cir. Dec. 20, 2024) ("The doctrine of *res ipsa loquitur* is inapplicable since the record does not indicate that Defendant[s] had 'exclusive control.'").

Accordingly, Defendants are entitled to summary judgment with respect to Plaintiffs' *res ipsa loquitur* claims.

> B.      The Turnover Duty

The first *Scindia* duty, the turnover duty, has two components:  (1) a primary "duty to take ordinary care" that "requires that a vessel must surrender the ship 'in such condition that an expert and experienced stevedoring contractor, mindful of the dangers he should reasonably expect to encounter . . . will be able by the exercise of ordinary care' to carry out his operations with reasonable safety"; and (2) a "corollary 'duty to warn'" that requires vessels to warn stevedores "of hazards that are 'known to the vessel or should be known to it in the exercise of reasonable care' and which are 'not known . . . and would not be obvious' to the stevedore 'if reasonably competent in the performance of his work.'"  *Giganti v. Polsteam Shipping Co.*, 997 F. Supp. 2d 182, 192 (E.D.N.Y. 2013), *aff'd,* 588 F. App'x 74 (2d Cir. 2015) (quoting *Howlett*, 512 U.S. at 98–99).  Notably, "[t]here is no duty to turn over an absolutely safe vessel." *Sinagra v. Atl. Ocean Shipping, Ltd.*, 182 F. Supp. 2d 294, 300 (E.D.N.Y. 2001).

Defendants argue that "there is absolutely zero evidence" that they failed to turnover the Capricornus "in a safe condition, nor is there any evidence of an unsafe condition which, in the exercise of reasonable care, Defendants should have known about."  ECF No. 73 at 25.  Plaintiffs argue that Defendants breached the primary duty by failing to inspect the drop nose pin before allowing Mr. Mondella and others to use the gangway.  ECF No. 74 at 27–28.

As an initial matter, nothing in the record suggests that the gangway was in a hazardous condition when stevedoring operations commenced on the date of Mr. Mondella's accident.  *See Howlett*, 512 U.S. at 92 (the turnover duty "relates to the condition of the ship upon commencement of stevedoring operations").  In fact, the deposition of Ordinary Seaman Ramon Jiminez (a member of the Capricornus' crew that was assigned to gangway watch on April 19,

2019) confirms that "one of the ship crew members . . . inspect[ed] the gangway to make sure that it was safe for the longshoremen to use to come aboard." ECF No. 73-5 at 28:16–22; *see also* ECF No. 57-3 at 29:10–18, 30: 8–20, 34: 7–19 (describing the initial inspection of the gangway). Further, Mr. Mondella stated that he used the gangway to first board the Capricornus at approximately 7:00 am on April 11, 2019, and that he "had not noticed a problem." ECF No. 57-1 at 9. Thus, even when viewed in a light favorable to Plaintiffs, the record reflects that, at the time stevedoring operations commenced, Mr. Mondella was able "to carry out his operations with reasonable safety." *Giganti*, 997 F. Supp. 2d at 192. Accordingly, there is no dispute that Defendants satisfied the turnover duty.

For the avoidance of doubt, the Court notes that Plaintiffs' counter arguments are unpersuasive. Plaintiffs' primary support for their argument that Defendants breached the turnover duty is Capt. Ahlstrom's testimony, in which he states his opinion that Defendants breached the turnover duty by failing to inspect the pin and account for its defects. *See* ECF No. 74 at 27–28 (citing ECF No. 74-17 ¶ 10; ECF No. 74-19 at 10). However, that testimony has been excluded for the reasons previously discussed in this Order. *See* Part I, *supra*. And, when "expert testimony is found inadmissible under Rule 702, then the remaining 'summary judgment determination is made by the district court on a record that does not contain that evidence.'" *Boateng*, 2022 WL 4357555, at *9 (quoting *Humphrey v. Diamant Boart, Inc.*, 556 F. Supp. 2d 167, 173–74 (E.D.N.Y. 2008)). For secondary support, Plaintiffs direct the Court to the Declaration of Richard Gonzalez. *See* ECF No. 74 at 28. However, this testimony is inapposite, as the declarant recounts his investigation of the gangway *after* Mr. Mondella "fell down a ship's gangway leading from the vessel [Capricornus] to the pier," ECF No. 74-20 ¶ 2,

and, therefore, does not speak to the condition of the gangway "at the time the stevedore embarks upon its operations." *Sinagra*, 182 F. Supp. 2d at 300.

For these reasons, even after reviewing the record in the light most favorable to Plaintiffs, the Court finds that not only have they failed to demonstrate a genuine issue of material fact with respect to Defendants' satisfaction of the turnover duty, but that the record supports that Defendants satisfied that duty. Accordingly, Defendants are entitled to summary judgment on this claim.

C.    The Active Control Duty

Once a stevedore's operations have begun, a vessel may be liable "if it *actively involves* itself in the cargo operations and negligently injures a longshoreman." *Gravatt v. City of New York*, 226 F.3d 108, 121 (2d Cir. 2000) (quoting *Scindia*, 451 U.S. at 167)) (emphasis in original). Even if the vessel is not actively involved in cargo operations, this duty applies "where the vessel . . . exercises 'active control' over the 'equipment' used by the longshoremen, or [] exercises 'active control' over the 'areas' where the longshoremen are working." *Vargas*, 431 F. Supp. 3d at 89 (quoting *Gravatt*, 226 F.3d at 121). Stated otherwise, the "active control duty" is comprised of two, related obligations "arising either from the vessel's 'active involvement' in cargo operations or its 'active control' of areas of the vessel encountered by longshoremen." *Gravatt*, 226 F.3d at 121. Where the allegations concern equipment or areas used by longshoremen, "the vessel must take care to prevent unreasonable hazards in areas of the vessel under its direct control." *Id.*

To establish that the Capricornus is liable for breaching the active control duty, Plaintiffs must establish: (i) that the duty was triggered; (ii) that it was breached; and (iii) that the breach proximately caused Mr. Mondella's injuries. *See Vargas*, 431 F. Supp. 3d at 89; *Trueba v. Flota Bananera Ecuadorian Lines, Inc.*, 675 F. Supp. 786, 788 (S.D.N.Y. 1987) ("plaintiff bears the

19

burden of establishing four elements:  duty, breach, causation, and damage" under § 905(b) of the LHWCA).  Here, Plaintiffs fail to establish that the active control duty was triggered. However, even if this duty was triggered, Plaintiffs fail to establish that Defendants breached it.

It is undisputed that Defendants were not actively involved in cargo operations. Accordingly, the Court's inquiry focuses on whether equipment at issue—here, the gangway— was under Defendants' active control.  Defendants argue that the active control duty does not apply, because they "were not actively controlling the gangway within the meaning of *Scindia* at the time of [Mr.] Mondella's fall."  ECF No. 73 at 33.  Plaintiffs argue that this duty applies because the gangway was under Defendants' "exclusive control," which, in Plaintiffs' view, "at least includes 'active' control."  ECF No. 74 at 24–26.

The Court agrees with Defendants:  Plaintiffs have not shown that the active control duty applies.  When a vessel is not actively involved in stevedoring operations, as is the case here, "[t]he focus of the active control inquiry is on unreasonable hazards in areas of the vessel under its actual *direct control*."  *Giganti*, 997 F. Supp. 2d at 195 (emphasis in original).  A vessel exercises control in this context if it "retain[s] substantial control, or because the vessel substantially interfered, by invitation or otherwise, with the stevedore's exercise of exclusive control."  *Rivera v. Arctic Ocean Shipping Ltd.*, No. 09-cv-4672, 2012 WL 1004840, at *6 (E.D.N.Y. Mar. 23, 2012) (quoting *Davis v. Portline Transportes Mar. Internacional*, 16 F.3d 532, 541 (3d Cir. 1994)).

Here, Plaintiffs' arguments regarding exclusive control fail for the same reasons the Court rejected their *res ipsa loquitur* theory.  *See* Part II.A, *supra*.  Defendants did not have direct control of the gangway because, after initial inspection on the morning of the accident, Defendants ceded control of the gangway to stevedoring operations, as discussed earlier in

connection with the turnover duty.  *See* Part II.B, *supra*.  From that point onward, Plaintiffs have failed to point to any record evidence indicating that Defendants substantially interfered with stevedoring operations.  Although some members of the vessel's crew were monitoring the gangway while serving as "gangway watch," *see* ECF No. 57-3 at 35:3–20, 47:5–23, the act of monitoring alone does not rise to interference with stevedoring operations, let alone the substantial interference required in this context, *cf. Rivera*, 2012 WL 1004840, at *6 (active control duty triggered when employee of vessel, who was supervising operations, ordered stevedore to move equipment in dangerous manner).  Next, even if Plaintiffs demonstrated that Defendants had exclusive control over the gangway, they fail to present a genuine dispute that Defendants failed to "take care to prevent unreasonable hazards in areas of the vessel under its direct control."  *Gravatt*, 226 F.3d at 121.  In fact, undisputed evidence supports that Defendants satisfied their duty.  Defendants assembled the gangway hours before Mr. Mondella's fall, ECF No. 57-3 at 16:2–7; separate vessel crew inspected the gangway to ensure it was made up safely, ECF No. 73-5 at 28:16–29:8; and they inspected the gangway throughout the day, including inspection about one hour before Mr. Mondella's fall, *id.* at 29:10–31:5, 33:8–18, 34:10–19; 68:17–69:13.[5]  Further, the undisputed record reflects that the gangway was in good working order because it was used multiple times by multiple longshoremen (including Mr. Mondella) and others before Mr. Mondella's fall.  *Id.* at 35:3–20, 69:22–70:20; ECF No. 73-7 at 64:15–

---

[5]    Without more, Defendants' access to the gangway and their ability to inspect the gangway are not enough to trigger the active control duty.  *See O'Hara v. Weeks Marine, Inc.*, 294 F.3d 55, 66 (2d Cir. 2002) (even though vessel employee was "supervising the barge's salvaging operations," the active control duty was not triggered until employee, aware "of the risks posed by that operation, [] negligently ordered [stevedore] to lift the stay-in-place forms"); *see also Vargas*, 431 F. Supp. 3d at 89–90 (noting that "courts have consistently held that the active control duty is triggered when the vessel orders longshoremen to engage in specific stevedoring tasks" and collecting cases).

66:6, 68:14–70:21.  Stated otherwise, the record reflects that Defendants took care (through various procedures, throughout the day) to prevent *unreasonable* hazard.  *See Giganti*, 997 F. Supp. 2d at 195–96 (even though active control duty did not apply, no breach of duty when defendant prevented unreasonable hazard); *see also DeBiase v. Cat Island Shipping, Ltd.*, No. 07-cv-3057, 2009 WL 3077193, at *9 (E.D.N.Y. Sept. 25, 2009) (even though active control duty did not apply, no breach of duty because record reflects defendant was not negligent).

Plaintiffs fail to show that these facts are in dispute.  Again, Capt. Ahlstrom's testimony does not create a factual dispute because, as already discussed, the Court's determination must rely "on a record that does not contain that evidence."  *Humphrey*, 556 F. Supp. 2d at 173–74. Plaintiffs' emphasis on Defendants' post-accident investigation report is similarly misplaced because Federal Rule of Evidence 407 precludes subsequent remedial measures as evidence of "negligence; culpable conduct; a defect in a product or its design; or a need for a warning or instruction."  Fed. R. Evid. 407.  Plaintiffs cannot rely on that report, regarding steps the Capricornus identified to improve vessel safety after the accident, to generate a factual dispute because inadmissible evidence does not create a dispute of fact.  *See Est. of Hamilton v. City of New York*, 627 F.3d 50, 53 (2d Cir. 2010) (district court "correctly excluded" evidence of subsequent remedial measures on summary judgment because such evidence "plainly runs afoul of Rule 407 of the Federal Rules of Evidence"); *Diaz v. Calabrese*, No. 13-cv-1531, 2014 WL 6883517, at *8 (E.D.N.Y. Dec. 4, 2014) (evidence "inadmissible under Federal Rule of Evidence 407" cannot prove negligence for purposes of summary judgment); *see also Presbyterian Church Of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 264–65 (2d Cir. 2009) (holding that "only

admissible evidence need be considered by the trial court in ruling on a motion for summary judgment").[6]

In sum, even if the active control duty was triggered, Plaintiffs fail to demonstrate that duty was breached.  Again, the admissible, undisputed record shows the exact opposite. Accordingly, the Court grants Defendants' motion for summary judgment on this point.

## CONCLUSION

For the reasons stated above, Defendants' motion, pursuant to Federal Rule of Evidence 702 and the *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) line of cases, to preclude the testimony of Capt. Ahlstrom is GRANTED.  Defendants' motion, pursuant to Federal Rule of Civil Procedure 56, for summary judgment dismissing Plaintiffs' claims is also GRANTED.

The Clerk of Court is respectfully directed to enter judgment consistent with this Order and close this case.


SO ORDERED.

/s/ Hector Gonzalez
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
December 15, 2025

---

[6]     Plaintiff's argument that the post-accident investigation report is admissible as a statement against interest, *see* ECF No. 74 at 17 n.8, is unpersuasive, as an exception to the rule against hearsay cannot override the Rule 407 problem.  *See Paolitto v. John Brown E. & C., Inc.*, 151 F.3d 60, 64 (2d Cir. 1998) ("[T]he fact that evidence is within an exception to the hearsay rule does not by itself make it admissible *per se*.").